# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

**WILLIAM HUGHES, individually, and as parent and next friend of D.W.H., a minor,**

       **Plaintiffs,**

-vs-                              **Case No.  2:06-cv-629-FtM-29DNF**

**DISTRICT SCHOOL BOARD OF
COLLIER COUNTY,**

       **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration on the following motion filed herein:

> **MOTION:**    **MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (Doc. No. 20)**
>
> **FILED:**    **MAY 9, 2007**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be granted in part and denied in part.

    The Defendant, the School Board of Collier County Florida ("School Board") is requesting that the Court dismiss this action for lack of subject matter jurisdiction based upon failure to exhaust administrative remedies.  The School Board claims that the Plaintiffs, William Hughes, individually, and as parent and next of friend of D.W.H. failed to exhaust administrative remedies as is required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 *et seq.*; Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. §794; Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. 12132; and the Civil Rights Act, 42 U.S.C. §1983. The Plaintiffs respond that they have exhausted their administrative remedies.

### I.  Standard for Motion to Dismiss

In deciding a motion to dismiss for failure to state a claim upon which relief may be granted, the Court must accept as true all factual allegations in the Complaint. *Hughes v. United States*, 110 F.3d 765, 767 (11th Cir. 1997); *Brown v. Crawford County, Ga.,* 960 F.2d 1002, 1010 (11th Cir. 1992). The Complaint must be viewed and all reasonable inferences must be made in favor of the plaintiff. *Sawinski v. Bill Currie Ford, Inc.*, 866 F.Supp. 1383, 1385 (M.D. Fla. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  A Complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted).

Attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(6) come in two forms: (1) facial attacks, and (2) factual attacks.  *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1991) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).  "Facial attacks on a complaint 'require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for the purposes of the motion.'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).  Whereas factual attacks challenge "'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'" *Id.* (citing *Lawrence*, 919 F.2d at 1529).  With a factual attack, the presumption of truthfulness of the allegations of the

complaint afforded a plaintiff under Fed.R.Civ.P. 12(b)(6) does not apply, and the court is free to weigh the factual evidence.  *Id.*

> "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction - it's very power to hear the case - there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

*Id.* at 960-961, (quoting *Lawrence*, 919 F.2d at 1529).

**II.  Allegations in the Complaint**

The Plaintiff who is the parent of the minor child, D.W.H. ("the Child"), alleges that the Child is 12 years old, is non-verbal, and is autistic.  (Com[1]. ¶6).  The Child was a student of the Collier County School District from 1991 to August 2006.  (Com. ¶8).  In August 2006, the Child relocated to Pennsylvania.  (Com. ¶8).

In May 2005, the Child learned that he was going to be placed at Pine Ridge Middle School. (Com. ¶9).  The Child could not attend the school nearest to his house in that the School Board centralized autistic children at Pine Ridge Middle School.  (Com. ¶10).  The parents were concerned regarding this placement and raised their concerns at an IEP meeting on May 13, 2005.  (Com. ¶10).

When the Child arrived at Pine Ridge Middle School, the parents found the classroom to be inadequate. (Com. ¶11, 12).  The class room was not set up, there were no doors to the exterior or windows, the classroom was attached to another classroom with children with behavioral issues, the therapy equipment was inadequate, and there was no therapy room. (Com. ¶12).  The teacher and other service providers were not prepared and were not qualified.  (Com. ¶14).  The teacher had not read

---

[1]  "Com." refers to the Amended Complaint (Doc. 19) filed April 25, 2007.

the Child's IEP prior to the start of school, and there were no curriculum or lesson plans developed for the Child. (Com. ¶14). Further, the teacher did not have sufficient sign language abilities to teach the Child. (Com. ¶14). The Child had no other service providers such as speech therapists, occupational therapists, behavior specialists, or ESE autism specialists assigned to him who could communicate in sign language. (Com. ¶15). All of the teachers relied on a severity aide to act as an interpreter, and this aide did not have the sign language skills to educate the Child. (Com. ¶15, 17). No inclusion curriculum was developed for the Child, and as a result, the Child was removed from two inclusion classrooms. (Com. ¶16). The Child remained in a third inclusion classroom, but there were no efforts to implement the goals and objectives of the Child's IEP. (Com. ¶16). The teachers failed to implement the short term objectives and implemented some goals but not others. (Com. ¶19). The progress reports were not adequate for the parents to evaluate the Child's progress. (Com. ¶19). The parents' request for raw data of the Child's progress and their request for an educational evaluation were denied. (Com. ¶20).

The Child's medical needs were ignored when he was placed in a school without a full-time nurse or someone trained to address seizures. (Com. ¶21). The Child suffered from his first seizure on December 7, 2005 while in school. (Com. ¶22). The staff was not trained in handling a child with a seizure and failed to record vital information concerning the seizure. (Com. ¶22). The parents requested an IEP meeting to amend the IEP to include a seizure disorder, have a full-time nurse on staff, have a health action plan in case of another seizure, and allow a specially trained seizure support dog in the school. (Com. ¶23). This request was denied. (Com. ¶23). The parents requested another IEP meeting after the Child had a second seizure outside of school. (Com. ¶24). The parents wanted to raise the same issues as were requested in the first IEP meeting and also wanted to discuss the

qualifications of the replacement severity aide. (Com. ¶24). The School Board held an IEP meeting on January 17, 2006, but limited the meeting to the issue regarding the service animal. (Com. ¶25). The parents' request to amend the IEP to include the seizure disorder and allow a service animal were denied. (Com. ¶26). The parents were given medical forms to be completed by a doctor. (Com. ¶29).

On the same day as the IEP meeting, by letter dated January 17, 2006, the parents filed a request for a due process hearing. (Com. ¶28, 32). The IEP meeting scheduled for January 23, 2006, was cancelled based upon the parents requesting a due process hearing. (Com. ¶31). The due process hearing commenced on May 1, 2006. (Com. ¶32). The due process hearing had been continued from February 20, 2006, then to April 6, 2006, and then to May 1, 2006. (Com. ¶33). The hearing concluded on June 22, 2006. (Com. ¶33).

The Child was also denied Extended School Year Services (ESY), and denied the McKay Scholarship. (Com. ¶41). On August 10, 2006, the parents requested another IEP meeting prior to the beginning of the new school year. (Com. ¶43). The School District scheduled an IEP meeting after the start of school and limited the topics to be discussed. (Com. ¶45). The School District provided medical forms to the parents that had to be completed prior to the IEP meeting. (Com. ¶47). The School Board denied the parents' request to have the Child attend summer school. (Com. ¶49). On August 24, 2006, the parents enrolled the Child in the Chester County, Pennsylvania School District where he was fully accommodated. (Com. ¶51). The parents allege that the Child was "constructively evicted" from the Collier County School District and the parents had no alternative but to place the Child in another school district. (Com. ¶38). The Plaintiff, William Hughes still resides in Collier County and will return the Child to Collier County when the School Board agrees to provide the Child with an education that provides a free and appropriate education ("FAPE"). (Com. ¶52).

In Count I, the Plaintiffs are requesting that the Court review the determination of the Administrative Law Judge ("ALJ").  The Plaintiffs claim that the Child was deprived of educational benefits for the following reasons: a) Refusal to hold IEP meetings; b) Refusal to amend the IEP when requested; c) Failure to have proper staffing for the Child; d) Failure to prepare the staff and the classroom prior to the start of the school year; e) Failure to have qualified teachers to instruct in sign language; f) Failure to allow the parents access to the classroom and to raw data of the Child's progress, and failure to conduct an educational evaluation; g) Failure to collect and maintain raw data on goal and objectives; and h) Failure to draft progress reports.  The parents assert that the ALJ's determination that the issues were moot at the administrative hearing due to the Child being placed outside of the School District was incorrect.  The Plaintiffs also assert "substantive violations" of the IDEA by the School Board which include: a) the failure to properly implement the goals and objectives of the IEP; b) the refusal to amend the IEP to reflect a seizure disorder; and, c) the denial of related services such as a full time nurse, health action plan, and service animal.  The Plaintiffs claim that the School Board used the stay put provision improperly.  The Plaintiffs assert that the ALJ incorrectly ruled that the Plaintiffs' IDEA action was moot, and is seeking review of the ALJ's October 18, 2006 decision.  The Plaintiff is also seeking review of the ALJ's decision of December 26, 2006.[2]

In Count II, the Plaintiffs allege that the Defendant violated Section 504 of the Rehabilitation Act of 1973; in Count III, the Plaintiffs allege that the Defendant violated the Americans with Disabilities Act; in Count IV, the Plaintiffs allege that the Child's civil rights were violated when the

---

[2] The Plaintiffs stated that they are "seeking review of the Order of December 26, 2007" but was actually decided on  December 26, 2006.

state subjected him to danger and jeopardized his health; and in Count V, the Plaintiffs allege that the School District violated the Florida Civil Rights Act.

### III. Analysis

The School Board asserts that the Plaintiffs failed to exhaust their administrative remedies as to the ALJ's decision entered on October 18, 2006.  Further, the School Board argues that the December 26, 2006 decision is time barred.

### A.  Failure to Exhaust Remedies

The School Board alleges that the Plaintiffs failed to exhaust administrative remedies pursuant to the IDEA as to the October 18, 2006 decision by the ALJ.  The Plaintiffs assert that they did exhaust their administrative remedies.  A parent who challenges an IEP or a matter relating to FAPE must request an "impartial due process hearing" before an administrative agency.  20 U.S.C. §1415(f)(1) and 34 C.F.R. §300.403(b).  If a party does not agree with the findings of the due process hearing, then "any party aggrieved by the findings and decision under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy."  20 U.S.C. §1415(i)(2)(A).  "'The philosophy of the IDEA is that plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA before resorting to the court to challenge the actions of the local school authorities.'" *J.P. v. Cherokee County Board of Education*, 2007 WL 582418, *1 (11th Cir. 2007), (citing *N.B. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1378 (11th Cir. 1996)). Exhaustion of administrative remedies is a requirement for the following reasons:

> 1) to permit the exercise of agency discretion and expertise on issues requiring these characteristics; 2) to allow the full development of technical issues and a factual record prior to court review; 3) to prevent deliberate disregard and circumvention of agency procedures established by congress; and 4) to avoid unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

*Id.* at 1378-9, (citing *Association for Retarded Citizens of Alabama v. Teague*, 830 F.2d 158, 160 (11th Cir. 1987)).   If a parent fails to request and participate in a due process hearing, then the civil action brought in court will be dismissed.  *J.P. v. Cherokee County Board of Education*, 2007 WL 582418, at *1.

The Eleventh Circuit has applied the IDEA's exhaustion requirement to a wide spectrum of claims due to the broad language of the statute.  The IDEA provides that the exhaustion remedy applies to: "**any matter** relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." (emphasis added), 20 U.S.C. §1415(b)(6), and *J.P. v. Cherokee County Board of Education*, 2007 WL at *2.   In addition, the IDEA "allows plaintiffs to seek "'remedies available under the constitution, [the ADA, Section 504], or other Federal laws protecting the rights of children with disabilities.'" *M.T.V. v. DeKalb County School District,* 446 F.3d 1153, 1158 (11th Cir. 2006).  Therefore, when plaintiffs bring suit under the IDEA as well as other statutes, plaintiffs must exhaust remedies under the IDEA to obtain relief under other statutes.  *Id*. at 1158.

In the Motion to Dismiss (Doc. 20), the School Board asserts that the Plaintiffs failed to exhaust all administrative remedies.  The School Board argues that the ALJ did not reach the merits of the claims alleged by the Plaintiffs.  The School Board contends that the ALJ found that the issues were moot based upon the Child being sent to a school in a different district and the Plaintiffs not seeking any monetary damages.  The Plaintiffs did follow the administrative procedures as set forth in the IDEA.  It is undisputed that they requested and received a due process hearing.   The allegations

-8-

in the Complaint are that the parents asked for a due process hearing by letter dated January 17, 2006, and the due process hearing started on May 1, 2006 and concluded on June 22, 2006.   The ALJ allowed the parties to present a factual record for review by allowing evidence at the due process hearing as did the School Board.   The ALJ did hear the evidence presented and rendered an opinion. The decision of the ALJ as to these claims does not affect the fact that the Plaintiffs did ask for and receive a due process hearing which is the requirement to exhaust.   The Court finds that as to the October 18, 2006 decision by the ALJ, the Plaintiffs did exhaust their administrative remedies, and the action as to allegations related to the October 18, 2006 decision should not be dismissed.   Based upon the Court finding that for the purposes of a Motion to Dismiss, the Plaintiffs did exhaust their administrative remedies as to the Final Order dated October 18, 2006, Counts I, II, III, IV and V should not be dismissed for failure to exhaust administrative remedies as to the Final Order of October 18, 2006.

**B.  Timeliness of December 26, 2006 Judicial Review**

The School Board argues that the Plaintiffs failed to seek a timely judicial review of the December 26, 2006 decision of the ALJ and therefore, the claims raised pursuant to that decision are time barred citing to 20 U.S.C. §1415(i)(2)(A).   The School Board claims that the first time the Plaintiffs properly sought judicial review of the December 26, 2006 decision was when the Plaintiffs filed their Amended Complaint on April 25, 2007.   The Plaintiffs assert that they mentioned the issues raised in the December 26, 2006, decision in their initial Complaint (Doc. 1) which was filed on November 17, 2006, the date of filing being prior to the ALJ's decision..   The Plaintiffs contend that

the School Board was on notice of the claims.  Neither party cites to any cases in support of their

positions.

In the ALJ's decision the ALJ included the following notice on the last page of his decision:

<u>NOTICE OF RIGHT TO JUDICIAL REVIEW</u>

This decision is final unless an adversely affected party:
a) brings a civil action within 30 days in the appropriate federal district court pursuant to section 1415(i)(2)(A) of the Individuals with Disabilities Education Act (IDEA); [Federal court relief is not available under IDEA for students whose only exceptionality is "gifted"]; or
b) brings a civil action within 30 days in the appropriate state circuit court pursuant to Section 1415(i)(2)(A) of the IDEA and Section 1003.57(5), Florida Statutes; or
c) files an appeal within 30 days in the appropriate state district court of appeal pursuant to Sections 1003.57(5) and 120.68, Florida Statutes.

The Plaintiffs do not contest that the limitations period is 30 days, but rather that they argue they

complied with the limitations period.  The IDEA does not contain a statute of limitations period, and

therefore the court must "borrow the statute of limitations from the most analogous state statute,

provided the borrowed limitations period is not inconsistent with underlying federal policies."  *Cory*

*D. v. Burke County School District*, 285 F.3d 1294, 1297 (11th Cir. 2002).  As cited by the ALJ, the

most analogous statute is Fla. Stat. §§1003.57(e)[3].  Section 1003.57(e) provides that a student who

qualifies may be given services as an exceptional student.  *Id.*  Parents must be notified that they are

entitled to a due process hearing which is to be conducted by an administrative law judge from the

Division of Administrative Hearings.  *Id.*  The decision of the administrative law judge is final, but an

aggrieved party may bring a civil action in circuit court. *Id.*  The circuit court will receive the records

––––––––––––––––––

[3] The ALJ cited to Fla. Stat. §1003.57(5), however this section was renumbered and is now Fla. Stat. §1003.57(e).

-10-

of the administrative hearing and hear additional evidence at the request of either party.  *Id*.  In the alternative, a party may request a review of the administrative law judge's decision by the district court of appeal as provided by §120.68.  *Id*.  Section 120.68 provides for judicial review of a final agency decision.  Pursuant to Fla. Stat. §120.68, a notice of appeal or petition for review must be filed within "30 days after the rendition of the order being appealed."  Fla. Stat. §120.68(2)(a).

The original Complaint (Doc. 1) was filed on November 17, 2006.  The Final Order (Exh. to Doc. 14) was entered on December 26, 2006.  Prior to the decision being final, the Plaintiff does not have the right to bring a civil action in federal district court pursuant to 20 U.S.C. §1415(i)(2)(A) which allows an aggrieved party to appeal the findings and decision and bring a civil action in a district court of the United States.  At the time of the original Complaint, there was no final decision by the ALJ as to the issues raised in the Final Order dated December 26, 2006, and therefore, those issues were not exhausted at the time of the filing of the original Complaint.  The issue of whether the School Board was on notice of the disputed claims in the Amended Complaint due to their inclusion in the original Complaint is not relevant to whether the claims were or were not exhausted at the time of the filing of the original Complaint.  The Court determines that the Plaintiffs did not properly raise any issues as to the Final Order dated December 26, 2006 in the original Complaint.[4]

The Plaintiffs assert that the Defendant was on notice that both decisions were involved in the original Complaint by the Plaintiffs' Response to the Motion to Dismiss (Doc. 14) dated January 26,

---

[4]  It is clear that the Plaintiffs were in a time bind.  The original Complaint had to be filed thirty (30) days after the first ALJ decision.  The Plaintiffs waited, obviously hoping the second ALJ decision would be forthcoming.  It was not.  While the Court understands the dilemma the Plaintiffs were in, the Plaintiffs still needed to file an Amended Complaint within thirty (30) days of the second decision to comply with the statute and accord exhaustion as to all issues.  Inclusion of the additional issues in the original complaint was not sufficient.

2007, which attached both decisions by the ALJ.  First, the Final Order was dated December 26, 2006, and the Response to the Motion to Dismiss (Doc. 14) was dated January 26, 2007, which is 31 days after the date of the Final Order and outside of the 30 day period.  The Plaintiffs argue that by including arguments in the Response to the Motion to Dismiss and attaching the December 26, 2006, decision, the Plaintiffs complied with Rule 8, and the Defendants were on notice of the claims for extended year service.  Rule 8 provides that a "pleading" must set forth the claim for relief and must contain a statement of the court's jurisdiction, a claim showing the pleader is entitled to relief, and a demand for judgment. Fed.R.Civ.P. 8(a).  A response to a Motion to Dismiss does not comply with the requirements of Rule 8.

The Court allowed the Plaintiffs leave to file an Amended Complaint which they did on April 25, 2007.  The Amended Complaint contained allegations regarding the December 26, 2006, Final Order by the ALJ.  However, the Amended Complaint was filed almost four (4) months after the Final Order was entered by the ALJ, and outside of the thirty (30) day period for judicial review.  The Court determines that the claims relating to a judicial review of the December 26, 2006 decision in Count I are time barred, and recommends that these claims be dismissed.

## IV. Conclusion

The Court respectfully recommends the following:

1) The Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 20) be denied for failure to exhaust administrative remedies relating to the Final Order of October 18, 2006 as to Counts I, II, III, IV and V.

2) The Motion to Dismiss Plaintiffs' Amended Complaint be granted as to the claims relating to a judicial review of the Final Order of December 26, 2006 in Count I.

3) The Plaintiffs be required to file a Second Amended Complaint limiting their claims for judicial review to the Final Order of October 18, 2006.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this   23rd   day of August , 2007.


DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE




Copies: All Parties of Record