## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

**WILLIAM HUGHES, individually, and as parent and next friend of D.W.H., a minor,**

          **Plaintiffs,**

-vs-                                                     **Case No.  2:06-cv-629-FtM-29DNF**

**DISTRICT SCHOOL BOARD OF COLLIER COUNTY,**

          **Defendant.**

_____

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This action was filed pursuant to the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. 1400 *et seq.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12132; the Civil Rights Act, 42 U.S.C. §1983; Fla. Stat. §413.08; and the Florida Civil Rights Act, Fla. Stat. §760.07 by the Plaintiff, William Hughes, individually and as parent and next friend of D.W.H., a minor, against the District School Board of Collier County, Florida ("School Board"). The IDEA portion was bifurcated, and referred to this Court for a report and recommendation. (See, Doc. 37). The Plaintiff claims that D.W.H ("the Child") was denied a free and appropriate public education ("FAPE") which violates the IDEA.

      Pursuant to the IDEA , the School Board must provide the Child with FAPE. *M.M. v. School Board of Miami-Dade County*, 437 F.3d 1085, 1095 (11th Cir. 2006). Integral to the concept of an "appropriate" education is that notion that the services provided must be tailored to serve the

individual needs of the child and not the child's disability. *Id*. To insure that each child's individual educational needs are met, the school and parents work together to develop an individualized education program ("IEP"). *Id*. Under the IDEA, a child is not entitled to the best program available nor must a program maximize a child's potential. *Id*. at 1102. The educational program must be sufficient to provide the child with some educational benefit. *Id*. at 1103, (citing *JSK v. Hendry County Sch. Bd.*, 941 F.2d 1563, 1573 (11th Cir. 1991)).

If the parents and school cannot agree on the contents of the IEP, either party may request a due process hearing. 20 U.S.C. §1415(f). In Florida, due process hearings are conducted by an administrative hearing officer of the Division of Administrative Hearings ("DOAH"). Fla. Stat. §230.23(4)(m)(5). The burden of proof or persuasion at the administrative hearing lies with the party who is seeking relief. *Schaffer v. Weast*, 546 U.S. 49, 126 S.Ct. 528, 537 (S.Ct. 2005), *M.M. v. School Board of Miami-Dade County, Florida*, 437 F.3d 1085, 1096, n. 8 (11th Cir. 2006). In this case, the Parent was seeking relief.

"The Supreme Court has established a two-part test to determine whether a student has been denied a FAPE." *Board of Education of Hendrick Hudson Central School District., Westchester County v. Rowley*, 458 U.S. 176, 206-207 (1982). An ALJ ("administrative law judge") must first determine whether the School Board has complied with the procedural requirements of the IDEA, and then the ALJ must determine whether the IEP was "reasonably calculated to enable the child to receive educational benefits." *Id*. at 207. If the ALJ determines that the School Board has complied with the IDEA's procedural requirements and the IEP does provide the child with necessary services, then the School Board has provided the child with FAPE. *Id*. The ALJ may also find that the School Board has failed to comply with the IDEA's procedural requirements. *Id*.

The DOAH decision is a final order which entitles a party adversely affected to bring an action in either a federal district court or a state court of competent jurisdiction. Fla. Stat. §230.23(4)(m)(4), and 20 U.S.C. §1415(i)(2). The District Court must give "due weight" to the decision of the ALJ, but the federal action is an independent action and not merely a review of the state administrative decision. *See, Rowley*, 458 U.S. at 206, *M.M.*, 437 F.3d at 1097. The findings of fact by the ALJ are considered to be "prima facie correct" and if the District Court fails to adopt these findings of fact it must explain why. *M.M.*, 437 F.3d at 1097. The District Court must also follow the Supreme Court's two-step analysis, first whether the School Board followed the procedural requirements of the IDEA, and second whether the proposed IEP provided the child with FAPE. *Id*. (citing *Rowley*, 458 U.S. at 206-207). If the District Court determines that the School Board has complied with the procedural requirements of the IDEA and the IEP provided the child with FAPE, then the inquiry ends. *Id*. If, however, the District Court determines that the School Board did not comply with the procedural requirements of the IDEA or that the IEP does not provide the child with FAPE, then the District Court "shall grant such relief as the court determines is appropriate." 20 U.S.C. §1412(a)(10(C)(ii). "The reviewing court has broad discretion in determining what is appropriate based on the circumstances of each case." *M.M.*, 437 F.3d at 1097-8, (citing *School Committee of Town of Burlington v. Department of Education of Massachusetts*, 471 U.S. 359, 365 (1985)).

**I. Procedural History**

On October 18, 2006, Administrative Law Judge Daniel Manry entered a Final Order of Dismissal (Doc. 14-2). The ALJ conducted a due process hearing which lasted thirteen (13) days.

(See, Transcript of the Due Process Hearing[1]). Prior to entering a Final Order on the testimony and evidence heard at the lengthy Due Process Hearing, the School Board filed on September 11, 2006, a Motion to Re-Open Testimony Due to Petitioner's Enrollment and Registration in a Foreign School District. (See, Final Order, p. 4, Doc. 14-2). In the Motion, the School Board asserted that the Child was no longer enrolled in the Collier County School District and was not entitled to FAPE from the School Board. (See, Final Order, p. 4-5, Doc. 14-2). The Petitioners admitted that the Child was enrolled on August 24, 2006, in a public school in the West Chester Pennsylvania School District and began attending school there on September 5, 2006. (See, Final Order, p. 5, Doc. 14-2). The Petitioner requested leave to amend his due process complaint to include reimbursement for educational expenses and compensatory education, and attorney's fees, but this request was denied by the ALJ. (See, Final Order, p. 5, Doc. 14-2). The ALJ concluded that due process complaint was moot based upon the Child being enrolled in another school district. (See, Final Order, p. 5-7, Doc. 14-2).

The Plaintiff filed the original Complaint (Doc. 1) on November 17, 2006, and then the Second Amended Complaint (Doc. 32), which is the operative complaint, on September 26, 2007. The Court received the record of the proceedings before DOAH, along with the Plaintiff's Memorandum in Support of IDEA Claim (Doc. 39), the School Board's Response to Plaintiffs' Memorandum in Support of IDEA Claim (Doc. 44), and the Plaintiff's Memorandum in Response to Defendant District School Board of Collier County Memorandum in Opposition to Plaintiff's IDEA Claim (Doc. 49). The Court entered an Order (Doc. 54) requiring the parties to file additional briefs on the issue of whether

---

[1] The Transcript of the Due Process Hearing was included in the records from DOAH and will be referred to as "Tr.".

this action is moot. The School Board filed its Memorandum (Doc. 55) and the Plaintiff filed his Response (Doc. 56). The parties did not request that additional evidence be considered.

**II. Facts**

The Child was born on February 24, 1994, was enrolled in the District School Board of Collier County and attended Pine Ridge Middle School through January 2006. (Resp.[2] Exh. p. 985- 1009). The Child's Primary Exceptionality was determined to be autism. (Resp. Exh. p. 985). An IEP was completed on November 9, 2005 for the Child. (Resp. Exh. p. 985-1007). The November 9, 2005 IEP was signed by the parents of the Child as well as the representatives of the School Board. (Resp. Exh. p. 985).

The parents wrote a letter to George Brenco, Principal of Pine Ridge Middle School dated January 12, 2006. (DOAH Exh.[3] p. 007). In the letter, the parents requested that the Child be permitted to have a service dog at school with him. (DOAH Exh. p. 007). A service dog was trained to assist the Child with his autism, and with seizures, which the Child experienced on December 7, 2005 and December 30, 2005. (DOAH Exh. p. 8). The School Board deemed the letter of January 12, 2006, to be request for a due process hearing. (DOAH Exh. Index).

On January 17, 2006, Mr. Hughes wrote another letter to Principal Brenco. (DOAH Exh. p. 2). In that letter, Mr. Hughes again asks that a service dog be permitted to accompany the Child to school, and that the Child's IEP be modified to incorporate seizure disorder. (DOAH Exh. p. 2, 6).

---

[2] "Resp. Exh." refers the exhibits the School Board presented which are part of the record from the DOAH hearing.

[3] "DOAH Exh." refer to the DOAH file.

Another IEP meeting was conducted on January 17, 2006. (Resp. Exh. p. 1009). The minutes from this IEP meeting indicate that Mr. Hughes requested a service dog be permitted for the Child and requested that the Child's IEP be amended to include seizure disorder. (Resp. Exh. p. 1009-1015). The representative from the School Board made the determination that a service dog was not needed to provide the Child with FAPE and determined that seizure disorders are not listed as a disability but are included in the IEP on conference notes, and in a written Health Plan. (Resp. Exh. p. 1015-16).

On August 24, 2006, the Child was enrolled in the West Chester Pennsylvania School District. (DOAH Exh. p. 366). The School Board filed a Motion to Re-Open Testimony regarding the Child being enrolled in a public school outside of the School District of Collier County. (DOAH Exh. p. 355). The parents did attempt to amend their due process complaint in a Response to an Order to Show Cause issued by the ALJ. (DOAH Exh. p. 366). However, the ALJ required the Parents to file a separate motion for leave to amend, and indicated that absent the consent of the School Board, the ALJ lacked statutory authority to grant the request to amend a due process complaint unless requested 5 days prior to the due process hearing. (DOAH Exh. p. 377-378). The ALJ then entered his Final Order finding the due process complaint to be moot. (Final Order, Doc. 14-2, p. 7).

### III. Mootness

The first issue the Court must address is whether this action is moot. The Court entered an Order (Doc. 54) on June 3, 2008 directing the parties to brief the issue of whether this action is moot based upon the Child being withdrawn from Collier County School District. The Court set forth the law regarding whether an action is moot in its prior Order (Doc. 54) and will restate it here. "'Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of "Cases" and

"Controversies."'" *Smith v. Allen*, 502 F.3d 1255, 1266 (11th Cir. 2007) (quoting *Mingkid v. U.S. Att'y Gen.,* 468 F.3d 763, 768 (11th Cir. 2006)). An action that is considered moot "'cannot be characterized as an active case or controversy.'" *Id.* (citing *Mingkid v. U.S. Att'y Gen.,* 468 F.3d 763, 768 (11th Cir. 2006). A live controversy must exist at every stage of the litigation for a case to be justiciable. *Brown v. Bartholomew Consolidated School Corp.*, 442 F.3d 588, 596 (7th Cir. 2006). "A case becomes moot when a court's decision can no longer affect the rights of litigants in the case before them and simply would be 'an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). If a plaintiff is seeking injunctive relief, then an action becomes moot when the threat of the action sought to be enjoined is no longer present, but an action for monetary damages is not rendered moot even if the underlying misconduct ceases. *Id.* (citations omitted).

### A. Type of Damages Requested

The issue of the type of damages requested must be resolved in determining whether an action is moot. In the Second Amended Complaint, the Plaintiff requests injunctive relief as well as compensatory damages and attorney's fees and costs. However, in the due process request in the letter dated January 12, 2006, the only issue raised was the request for the Child to be able to bring a trained service dog to school with him. In the letter dated January 17, 2006, the Parents did make the same request regarding the service dog and requested that the IEP be modified to incorporate seizure disorder. No request for monetary relief was made in the administrative proceeding. The first time the request was made was in the District Court.

The IDEA requires that a party must first exhaust administrative remedies prior to filing a civil action. *J.P. v. Cherokee County Board of Education*, 218 Fed. Appx. 911, 913 (11th Cir. 2007), (citing

20 U.S.C. §1415(l)). "''The philosophy of the IDEA is that plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA *before* resorting to the courts to challenge the actions of the local school authorities.'" *Id*. (quoting *N.B. v. Alachua County Sch. Bd.,*, 84 F.3d 1376, 1378 (11th Cir. 1996). The only damages that were raised at the administrative level were for declaratory relief. Therefore, the Court respectfully recommends that all issues other than the request for the Child to be able to bring a trained service dog to school with him, and the request to have the IEP modified to include seizure disorder be dismissed for failure to exhaust administrative remedies.[4] The only relief remaining is for declaratory relief.

### B. Removal of Child from School District

With only the injunctive relief issue remaining, once the parties removed the Child from the public school in the School District of Collier County, the issues relating to whether the Child could have a trained service dog in school, and whether the IEP could be modified to include seizure disorder were potentially moot as the Child was receiving these services in a different school district. However, an exception to the mootness doctrine is when conduct complained of is "'capable of repetition, yet evading review.'" *Honig v. Doe*, 484 U.S. 305, 318 (1988) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). This narrow exception has two elements, first the challenged action is of a duration that is too short to be fully litigated prior to its expiration; and second there is a reasonable expectation that the complaining party will be subject to the same action again. *Adler v. Duval County School Bd*, 112

---

[4] Although this Court is addressing only the IDEA portion of the Complaint, the Court notes that claims raised under Section 504 of the Rehabilitation Act, and claims raised under the ADA are also subject to Section 1415(f) requirement of exhaustion. *Babicz v. School Board of Broward County*, 135 F.3d 1420, 1422 (11th Cir. 1998), *J.P. v. Cherokee County Board of Education*, 218 Fed. Appx. 911, 913 (11th Cir. 2007), and 20 U.S.C. §1415(l).

F.3d 1475, 1477-78 (11th Cir. 1997) (citing *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curium)).

The first element is satisfied in this case. The IDEA process is a lengthy one which does not always allow the issues raised to be fully litigated prior to the Child's education needs changing. The issue whether this case is moot turns on the second element which is whether there is a reasonable expectation that the Child will return to the School District of Collier County and once again be faced with not being permitted to bring a trained service dog with him to school, and not being allowed to have his IEP modified to include a seizure disorder.

In *Brown v. Bartholomew Consolidated School Corp.,* 442 F.3d 558, 596 (7th Cir. 2006), the Seventh Circuit determined a case where the family had relocated and the child was enrolled in a new school district. The child was given a new IEP in the new school district. *Id*. The school board argued that the Browns' relocation to a new school district rendered the action moot. *Id*. The Browns argued that their action was not moot based upon the exception to the mootness doctrine that the "'wrongs'" were "'capable of repetition, yet evading review.'" *Id*. at 598 (quoting *Honig*, 484 U.S. at 318). The court found that the Browns had satisfied the first prong of the exception that challenges to IEPs normally last longer than the school year, and then focused on the second element. *Id.* at 598-99. The issue was whether the Bartholomew School District would deny the child FAPE in the future. *Id*. at 599. The Seventh Circuit determined that the child who suffered from autism has an "evolving set of challenges for educators, one that requires his IEP to be periodically revised. What was right for Bobby in kindergarten may not be the proper educational program when he enters the third grade." *Id*. The Court decided that if it would determine whether the child should have been mainstreamed back in kindergarten, it would be giving an advisory opinion, and would do nothing "to define the

contours of the parties' continuing legal relationship under the IDEA such that future repetitions of the injury could be avoided." *Id*. at 599-600. The Seventh Circuit found that the case presented was moot. *Id*. at 600.

At first glance the *Brown* case appears very similar to the case at bar. Both of the children have autism and both children relocated to new schools districts. However, there are significant factual differences between the two case. First, in this case the Parent still resides in Collier County, and continues to own a home there. In the Second Amended Complaint, the Plaintiff states that he is planning on returning the Child to Collier County when the School Board provides the Child with FAPE. (Second Amended Complaint, Doc. 32, ¶53). In addition, Mr. Hughes provided an Affidavit (Doc. 39-2) which states that he is employed in Collier County and plans on having his son return to Collier County when the School Board is willing to provide him with FAPE and his other rights as a person with disabilities. (Doc. 39-2, p.4). There are cases that hold that when a parent maintains a residence in the district, a child's claim is not moot even if the child is enrolled in another school district. *Essen v. Board of Education of Ithaca City School District*, 1996 WL 191948, *5 (N.D. N.Y. 1996) (citing *Heldman v. Sobol*, 962 F.2d 148 (2nd Cir. 1992) and *Hiller v. Brunswick*, 687 F.Supp. 735 (N.D. N.Y. 1988)).

In *Essen*, *supra*, the family relocated to another school district, however, they still owned their home in the first school district and maintained their permanent residence there. *Id*. The Essens claimed that they intended to return to the school district once a suitable educational program was established for their son. *Id*. at 5. Relying on the allegations in the complaint and affidavits, the Court found that the Essens relocation to Johnson City did not render the action moot. *Id*.

In the instant case, Mr. Hughes has remained in Collier County, is employed in Collier County, and maintains a residence in Collier County. His statements under oath show his intent to return the Child to Collier County when a satisfactory educational plan is in place. The School Board did cite to the Transcript at DOAH where the mother of the Child testified that she did not want the Child to return to Pine Ridge Middle School because she did not "feel it's an appropriate environment for" the Child. (Tr. p. 1408). The mother was testifying as to why Pine Ridge Middle School was not an appropriate placement for the Child. She was not asked whether she would return the Child if a satisfactory educational plan was in place. The Court finds this one bit of testimony not to be persuasive that the parents would not return the Child to Collier County if the a satisfactory educational plan is in place.

The Court also considered the issues raised in this case to determine if there a reasonable expectation that the Child will be subject to the same action again if he returns to public school in Collier County. The remaining issues are regarding the Child being able to bring a trained service dog to the school and whether his IEP will reflect a seizure disorder. Unlike in *Brown*, *supra*, these issues will still exist regardless of the age of the Child and if the Child is enrolled in the School District of Collier County there is a reasonable expectation that the Child and parents would be subject to the same action again. Therefore, the Court finds that ALJ's Final Order of Dismissal finding the issues raised moot should be reversed. Based upon his ruling that this action was moot, the ALJ failed to make any factual findings relating the whether the Child should be permitted to have a trained service dog with him at school and whether the IEP should be modified to include seizure disorder. The Court determines that this matter should be remanded to the ALJ to make that determination.

**IT IS RESPECTFULLY RECOMMENDED:**

That as to Count I of the Second Amended Complaint (Doc. 32), the IDEA portion of this action should be remanded to the administrative law judge to determine the only remaining issues which are whether the Child is entitled to a trained service dog at school with him, and whether his IEP should be modified to include seizure disorder. All other issues should be dismissed for failure to exhaust administrative remedies.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this ___22nd___ day of September, 2008.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record